IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 3, 2014

**JOHN BRUNNER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 07-02047    Glenn Ivy Wright, Judge**

———————————————

**No. W2013-02120-CCA-R3-PC - Filed December 15, 2014**

———————————————

John Brunner ("the Petitioner") was indicted for first degree murder and domestic assault. After a trial, a jury convicted him of the lesser-included offense of second degree murder and domestic assault. In this appeal from the denial of post-conviction relief, the Petitioner argues that he was denied effective assistance of counsel. After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which ALAN E. GLENN, and ROBERT W. WEDEMEYER, JJ., joined.

Ruchee Patel, Memphis, Tennessee, for the appellant, John Brunner.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner, John Brunner, was indicted on charges of first degree premeditated murder and domestic assault for the death of his mother ("the victim"). After a trial, a jury convicted the Petitioner of the lesser-included offense of second degree murder and domestic

assault. This Court affirmed his conviction on direct appeal, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal. See State v. John Brunner, No. W2008-01444-CCA-R3-CD, 2009 WL 2151822 (Tenn. Crim. App. July 17, 2009) *perm. app. denied* (Tenn. 2009).

The Petitioner filed a timely petition for post-conviction relief claiming trial counsel was ineffective. Post-conviction counsel was appointed, but no amended petition was filed. An evidentiary hearing was held on February 1, 2013, and the post-conviction court took the case under advisement at the conclusion of proof. Ultimately, the post-conviction court entered an order denying post-conviction relief, stating that the Petitioner failed to prove both that trial counsel was deficient and that he suffered any prejudice.[1] The Petitioner filed a timely appeal. Following our review, we affirm the judgment of the post-conviction court.

## Factual and Procedural Background

A detailed summary of the evidence presented at trial can be found in this Court's opinion from the direct appeal in this case. See John Brunner, 2009 WL 2151822, at *1-5. We will restate the facts as they are pertinent to the Petitioner's appeal from the post-conviction court's ruling.

### *Trial Proceedings*

The Petitioner lived in a small house on the victim's property. Id. at *1.[2] According to the Petitioner's testimony at trial, on the evening the victim died, she followed the Petitioner from her house into the backyard and began hitting him with her cane. Id. at *4. The Petitioner admitted he killed the victim and testified that he "just kind of lost it" and grabbed the victim's cane and hit her "more than a couple of times." Id. On cross-examination, the Petitioner testified that both he and the victim fell to the ground during the altercation. Id. at *5. He stated that he grabbed the victim's neck and squeezed it for one to

---

[1] This Court notes that the post-conviction court did not rule on the petition until September 5, 2013 – seven months after taking the petition under advisement. It appears that this delay was caused by the death of the judge who presided over the post-conviction hearing, Judge W. Otis Higgs, Jr. The order was ultimately entered by the judge appointed to fill his seat. We note that these were extraordinary circumstances; nevertheless, the order exceeded the 90 days allowed pursuant to Tennessee Code Annotated section 40-30-111(d) for the final disposition of a post-conviction petition when "unforeseeable circumstances render a continuance a manifest necessity."

[2] In this appeal, we have reviewed the facts as summarized by this Court on direct appeal, as well as the trial transcript. We have included citations to the direct appeal opinion where appropriate. Any facts without citations are taken from the trial transcript.

two minutes until she was unconscious. Id. He left the victim's body in the yard overnight and did not call anyone for help. Id. The next morning, between 7:00 a.m. and 8:00 a.m., he called the police. Id.

When police arrived on the scene, the Petitioner signed a consent form allowing the police to search of all buildings, cars, and premises at the victim's address. The police took statements from the victim's care giver and daughter at the scene and transported the Petitioner to the police station so that his statement could be recorded. At this time, the Petitioner was not a suspect and was free to leave whenever he wished. The police recorded the Petitioner's statement, collected his clothes as evidence because there was blood on his shorts, and called a relative to pick up the Petitioner from the police station.

Before the Petitioner's relative arrived, the medical examiner informed the police that the victim was killed by strangulation and blunt force trauma to the head. At this point, the Petitioner was brought back into the interview room, read Miranda warnings, and questioned as a possible suspect in the case. See Miranda v. Arizona, 384 U.S. 436 (1966). The Petitioner waived his Miranda rights and admitted killing the victim after she attacked him with her cane.

While in custody awaiting trial, the Petitioner also told another inmate, Sam Rooker, that he had killed the victim. At trial, Mr. Rooker testified the Petitioner told him that he had killed the victim by choking her. Id. at *3. He stated the Petitioner detailed the technique he used to choke the victim and explained how he physically restrained the victim to prevent her from fighting back. Id. The Petitioner also told Mr. Rooker that he tried to make the scene look like an accident and did not call anyone about the victim's death until the next morning. Id.

Both the victim's daughter and care giver testified that the victim was legally blind. Id. at *1, *2. Both testified that the victim could not walk without assistance. Id. at *1, *2.

During the trial, the jury was provided with a typed transcript of audio tape recordings of the Petitioner's statements to the police. The court instructed the jury as to how it should utilize the transcript:

> That transcript is not accurate. There are things on the transcript
> where it says inaudible. Things that whoever was typing
> couldn't hear. . . . Those transcripts are not evidence at all.
> They're meant to help you if you want to use them in listening
> to the tapes to determine what's said. . . . But the audio tape and
> your memories of it and the notes you take are the evidence.

-3-

> Those transcripts are not going to be exhibits. You will not have the transcripts to take back with you to the jury room. . . . And so, if you're back there deliberating about what was said about this or that or the other, you're not going to be given a transcript. . . . You may have to hear a portion of a tape or we could probably have to play the whole thing again.
>
> So what you need to do as far as your notes and your memories is realize that the tape is the exhibit, not the transcript, and the transcript will be taken back up. You should not write on those transcripts at all.

Additionally, at the close of proof the trial court charged the jury as to what material could be used as evidence. When instructing the jury on how to use its notes, the trial court made the following statement:

> Members of the jury, the Court charges you that if any of you have been taking notes in this case, that these notes are for your individual use only and you should not use your notes directly or indirectly, explicitly or implicitly to persuade other jurors as to the accuracy of your notes. . . . They should not be shown to others nor compared nor referred to in any way as authority but should be used privately only by you as an aid to your individual memory.

At the conclusion of proof, the jury convicted the Petitioner of second degree murder and domestic assault.

### Post-Conviction Proceedings

Subsequently, the Petitioner filed a *pro se* petition for post-conviction relief claiming ineffective assistance of counsel. The Petitioner made several allegations to support his claim that trial counsel was ineffective, including the following five claims which are raised on appeal: (1) trial counsel withdrew a motion to suppress the Petitioner's confession to police; (2) trial counsel failed to advise the Petitioner not to discuss his case with fellow inmates; (3) trial counsel failed to object to the trial court's instruction to the jury stating that the jurors' notes were evidence; (4) trial counsel failed to object to the introduction of an eviction letter addressed to the Petitioner; and (5) trial counsel failed to object to testimony regarding the victim's eyesight.

At the post-conviction hearing, the Petitioner testified that he prepared the petition for post-conviction relief himself and signed it under penalty of perjury. He further stated that

he did not have any other testimony to add, and he wished to submit his petition for post-conviction relief as his testimony.  The post-conviction court allowed him to do so.  The Petitioner gave no other testimony in this matter and was not cross-examined.

In his petition for post-conviction relief, the Petitioner primarily makes legal arguments to support his claim that counsel was ineffective.  The Petitioner provides few facts to support his legal arguments.  For instance, the Petitioner stated that trial counsel withdrew a blanket motion to suppress.[3]  Additionally, the Petitioner noted that he was the only person taken from the scene and interviewed at the police station.  He further stated that the officer who transported the Petitioner to the police station "was sure that the Petitioner was under arrest" at the time he transported the Petitioner to the police station.  He stated that the affidavits of complaint were not completed until he had been taken to the police station.  However, the Petitioner also said that he was given Miranda warnings before he admitted to the officers that he killed the victim.

The Petitioner also stated that trial counsel never told him not to discuss his case with other inmates in the jail, and as a result, the Petitioner "inadvertently" confessed to killing the victim to Mr. Rooker.  Mr. Rooker then testified against the Petitioner at trial.

The Petitioner also stated trial counsel failed to object to the trial court's erroneous instruction that their notes were evidence in the case.

The Petitioner further argued that trial counsel should have objected to the introduction of an eviction letter addressed to the Petitioner from the victim that was found in the Petitioner's residence during a police search.  The Petitioner claimed that his sister consented to the search of the Petitioner's residence, but she did not have the authority to give that consent.

The Petitioner stated that trial counsel failed to object to the victim's daughter's and caregiver's testimony that the victim was legally blind and in poor health.  According to the Petitioner, the caregiver testified that the victim's eye doctor informed him that she was legally blind.  The Petitioner further stated that the victim's daughter and caregiver were not experts in any medical field.

---

[3] The Petitioner argued that trial counsel's withdrawal of the blanket motion to suppress constituted deficient performance because the Petitioner was "illegally and unconstitutionally arrested."  The Petitioner claims that had trial counsel pursued a motion to suppress, evidence gathered after the Petitioner was removed from the crime scene would have been suppressed and the Petitioner would have been acquitted for lack of evidence.

Trial counsel testified that 95 percent of his practice was in criminal law, and he had handled over 100 murder cases, at least 50 of which went to trial. Trial counsel admitted that he did not try to suppress the Petitioner's statement to the police for strategic reasons and because he did not see a legal basis for such a challenge. Further, trial counsel explained that his trial strategy was to embrace the Petitioner's statement to police and argue that the Petitioner "just snapped" in the hope that the jury would return a conviction for the lesser-included offense of voluntary manslaughter. Trial counsel said he discussed this strategy with the Petitioner, and the Petitioner agreed to it.

Trial counsel further stated that he routinely instructs his clients not to discuss their case with other inmates while they are incarcerated. Trial counsel also said that he could not imagine he failed to tell the Petitioner not to discuss his case because such instruction was "literally Defense 101." However, trial counsel said he did not recall specifically advising the Petitioner not to discuss his case.

Trial counsel stated that he did not remember any trial testimony regarding the victim's eyesight, and he could not determine what relevance such testimony would have to the Petitioner's case. He further conceded that he did not object to the admission of the eviction letter.

Trial counsel stated that he never thought an acquittal was a realistic outcome for the Petitioner's case. He stated that he discussed several trial strategies with the Petitioner, including self-defense and insanity. However, based on the facts of the case, trial counsel felt the only viable defense was to try to obtain a verdict for voluntary manslaughter. Trial counsel stated that he had no regrets about the way he handled the trial.

Trial counsel provided no testimony regarding the trial court's instruction about the jurors' notes.

At the conclusion of the hearing, the post-conviction court took the case under advisement. In a written order, the post-conviction court denied the petition for post-conviction relief, finding that trial counsel's performance was not deficient and that the Petitioner failed to prove by clear and convincing evidence that he was prejudiced. This timely appeal followed.

## **Analysis**

In order to prevail upon a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012); Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). "Evidence is clear and convincing

when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). Whether the petitioner has met his burden of proof is a question of law that this Court reviews *de novo*. Arroyo v. State, 434 S.W.3d 555, 559 (Tenn. 2014).

On appeal, we review a trial court's findings of fact under a *de novo* standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). The trial court's conclusions of law are reviewed "under a purely *de novo* standard, with no presumptions of correctness . . . ." Id. When reviewing the trial court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." Id. at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." Id. (citing Henley, 960 S.W.2d at 579).

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Id.; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that the counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing

professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

*Withdrawal of the Motion to Suppress the Petitioner's Statements*

The Petitioner argues that trial counsel should not have withdrawn the blanket motion to suppress because trial counsel "had a plausible claim to challenge the admissibility of [the Petitioner's] first confession [](part of a quote from the Petitioner's brief; deletion needs to be indicated by brackets) based on the failure to issue Miranda warnings." The State argues that trial counsel's decision to withdraw the motion to suppress was a tactical decision, and the Petitioner has failed to prove that such tactical decision fell below the standard of a competent criminal defense attorney. We agree with the State.

The Petitioner argued in his petition for post-conviction relief that his arrest was illegal, and trial counsel should have pursued a motion to suppress the statements the Petitioner made to the police. However, at the post-conviction hearing, trial counsel testified that he did not see a legal basis by which to challenge the Petitioner's confession to police, and the trial record supports trial counsel's assertion. The record reflects that the Petitioner was simply a witness when he was transported to the police station and he was free to leave at any time. The police even called one of his relatives to ask that the Petitioner be picked up from the police station. However, once the medical examiner confirmed the cause of death, the police brought the Petitioner back into the interview room, advised him of his Miranda rights, and obtained the Petitioner's confession.

Trial counsel further stated that he made a strategic decision to embrace the Petitioner's confession and pursue a conviction for the lesser-included offense of voluntary manslaughter. It appears that this strategy was somewhat successful as the Petitioner was convicted of second degree murder rather than the indicted offense of first degree murder. As this Court will not second-guess a reasonable trial strategy, see Granderson, 197 S.W.3d at 790, we cannot say that trial counsel's decision constitutes deficient performance. Therefore, the Petitioner has failed to demonstrate by clear and convincing evidence that trial counsel's decision to withdraw the motion to suppress was deficient. Additionally, the Petitioner has offered no proof to show that the outcome of the trial would have been

different if the Petitioner's statement to the police has been suppressed. The Petitioner is not entitled to relief.

*Failure to Advise the Petitioner Not to Discuss His Case with Other Inmates*

The Petitioner argues that trial counsel was deficient for failing to advise him not to discuss his case with other inmates. It is unclear from the testimony at the post-conviction hearing whether trial counsel advised the Petitioner not to discuss his case, and the post-conviction court did not make a specific finding of fact as to this allegation.[4] However, even if trial counsel failed to give such advice, the Petitioner has failed to prove that he was prejudiced by Mr. Rooker's testimony.

At trial, Mr. Rooker testified that the Petitioner admitted that he strangled the victim and held her down to prevent her from fighting back. The Petitioner also admitted to Mr. Rooker that he staged the scene to make it look like an accident, and he did not call the police until the next morning. However, the Petitioner had also told the police that he had killed the victim, and that confession was entered into evidence at trial. Further, the Petitioner's testimony at trial was consistent with Mr. Rooker's testimony. Based on this evidence, the Petitioner has not provided clear and convincing evidence that he was prejudiced by the admission of Mr. Rooker's testimony. The Petitioner is not entitled to relief.

*Trial Court's Instruction Regarding Jurors' Notes*

The Petitioner contends that trial counsel was deficient because he failed to object when the trial court instructed the jurors that they could use their notes as evidence. The State argues that the Petitioner has failed to prove how he was prejudiced by the trial court's instruction and therefore is not entitled to relief. We again agree with the State.

The challenged instruction was made when the trial court explained to the jury the difference between an audio tape entered into evidence and the transcripts of that audio tape. The trial court informed the jury that the transcripts were not evidence but that "the audio tape and your memories of it and the notes you take are the evidence." Trial counsel did not

---

[4] Trial counsel testified that he was not sure whether he advised the Petitioner not to discuss his case with other inmates, but he "could not imagine" failing to give the Petitioner such advice. We note that the Post-Conviction Procedure Act states, "The petitioner shall appear and give testimony at the evidentiary hearing if the petition raises substantial question of fact as to events in which the petitioner participated. . . ." Tenn. Code Ann. § 40-30-110(a) (2012). In this case, the Petitioner chose not to offer "testimony," relying instead on the allegations made in his petition for post-conviction relief, and he was not cross-examined.

object to this instruction. However, at the conclusion of the proof the trial court correctly instructed the jury that any notes they took were not evidence and were only to be used to aid the jurors' individual memories.

The Petitioner is correct that jurors are to decide a case based solely on the evidence introduced at trial. <u>See</u> Tenn. R. Crim. P. 24(g)(5). However, even if we found that it was deficient performance for trial counsel to fail to object to the court's initial instruction, the Petitioner has failed to show how he was prejudiced by the trial court's initial instruction regarding the notes. The trial court later correctly charged the jury not to consider their notes as evidence. Moreover, even if jurors had viewed their notes on the audio tape as evidence, it is impossible to determine if any of the notes conflicted with the actual exhibit because the Petitioner did not established the content of the jurors' notes. Therefore, the Petitioner has failed to prove by clear and convincing evidence that he was prejudiced and is not entitled to relief.

*Other Allegations*

In his brief, the Petitioner makes passing allegations that trial counsel was ineffective because he failed to object to the introduction of the eviction letter "even though there were plausible Fourth Amendment claims that could have excluded this evidence" and failed to object to "inadmissible evidence (hearsay, non-expert on expert issues) that portrayed the victim as significantly more vulnerable that she was in real life." The Petitioner does not make any further argument to support these claims. Further, he does not provide any citations to legal authority to support these statements. In regard to the admission of the eviction letter, the Petitioner does not provide a citation to the record. Because the Petitioner has failed to make more than cursory statements alleging deficiency of trial counsel and has not provided citations to authority or the record, he has waived our consideration of the issues. <u>See</u> Tenn. Ct. Crim. App. R. 10(b).

## **Conclusion**

For the aforementioned reasons, we affirm the judgment of the post-conviction court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

-10-